*In the Matter of Custody of*
*A.M.C. and I.C.*

In the Family Court of the Navajo Nation
Judicial District of Chinle, Arizona

No. CH-FC-1292-03

June 22, 2004

## ORDER FOR TEMPORARY CUSTODY

THIS MATTER, HAVING COME before the Court on a Hearing on May 24, 2004, with the parties present, and the Court having reviewed all documents submitted in this matter, both before and after the hearing, including a Summary of Facts with attached documents, submitted by Respondent and filed with the Court on June 3, 2004, and a Response To 30-Day Civil Summons, submitted by Respondent and filed with the Court on June 10, 2004, and a Report filed on May 21, 2004 by the Division of Social Services, ORDERS that Temporary Custody of both children is granted to Respondent and FURTHER ORDERS that Petitioners immediately return Minors to the custody of Respondent. These orders are based upon the following findings of fact and conclusions of law.

1. Respondent is the father of Minors. This is based upon birth certificates provided by Respondent indicating that he is the parent of both children. Neither Petitioners nor Social Services submitted any challenges to Respondent's parental status. Petitioners named him as the father in their initial Petition to this Court. The Report from Social Services indicates the agency's assumption that he is the father, and indicated that the mother of the children would leave them in Respondent's care when required. Respondent affirms that he is the parent and affirms his desire to support and care for the Minors.

2. Respondent also submitted to the Court a Petition for Child Support initiated by the State of Arizona, naming Respondent as the party responsible for such support, for the same minor children, in Arizona Superior Court on March 22, 2001. However, no final orders of this court proceeding were submitted, so the Court finds this evidence inconclusive.

3. The mother of the Minors is deceased. Prior to her death, she had the primary custody and care of the Minors. Minors' Mother and Respondent were never married. They lived together for at least four years in Phoenix before they were separated. Following their separation, the Minors continued to reside in Phoenix with their mother.

4. Minors' Mother died on September 9, 2003. For a short period of time before her death, she resided on the Navajo Nation to receive medical treatment. There is no indication that she ever intended to change her primary residence from Phoenix to the Navajo Nation.

5. At the time of their mother's death, the Minors were being cared for by Respondent in Phoenix. He brought them up to the reservation for their mother's funeral. After the funeral, he left the older child with his mother's relatives, and returned to Phoenix with the younger child.

6. On September 19, 2003, this Court granted on Order for Immediate Temporary Custody to Petitioners of the Minors, pursuant to a Petition for Custody filed with the Court on the same day.

7. Petitioners live in Phoenix or in the Phoenix area. Following the Court Order, Petitioners have maintained the care and custody of A.C. I.C. has at all times remained under the care and custody of her father.

8. On May 7, 2004, this Court vacated its temporary custody order concerning I.C. and awarded temporary custody to respondent.

9. The Petition for Temporary Custody and the Order for Immediate Temporary Custody, filed and signed on September 19, 2003, was never served upon Respondent. However, Respondent has subsequently appeared in a hearing with this court on May 7, 2004, and has submitted various motions in this matter. Respondent never raised the issue of personal jurisdiction with the Court. Based upon the Respondent's voluntary appearances and motions filed in opposition, the Court finds that respondent has waived his defense of failure of proper service to establish jurisdiction.

10. The Minors are enrolled members of the Navajo Nation, and their mother was a full-blooded Navajo. Therefore, this Court has jurisdiction over them, even if they do not reside on the Navajo reservation.

11. According to Social Services, both Minors seem to have adjusted well to their mother's death, appear to be in good health, and have been doing well in school. There have been no reports to this Court of any history of abuse, dependency actions or involvement with social service agencies regarding neglect or mistreatment of the Minors by either of the parents at any time.

12. The standard for this Court in regard to custody is the best interests of the children. This is the beginning and end of all decision-making in relation to their care and well being.

13. Since the Order for Immediate Temporary Custody was granted,

Petitioners have allowed no visitation between Respondent and A.C. They have initiated protective orders in Phoenix so that Respondent can have no contact with his son or with school officials in regard to his son.

14. Since the Order for Immediate Temporary Custody, Petitioners have allowed no visitation between children, other than telephone visitations between the Minors, initiated by Respondent.

15. The Court finds that it is in the best interests of the children that they reside together so that they can grow up with each other and remain together.

16. The Court finds that in the absence of any indications of abuse, neglect, or mistreatment that the Minors should reside with Respondent. This case is not about who potentially can provide a better home. Respondent as father to the minors has a superior right to the care and custody of his children. It is also in the best interests of the children to maintain or develop a close bond with their father.

17. It is also in the best interests of the children that they maintain relationships with the relatives of their mother, not only for the connection to the memory of their mother, but also that they may maintain a connection to the Navajo Nation and to Navajo traditions and teachings. This Court considers it is of utmost importance that the children are taught about their clan relationships, the Navajo language, and the opportunity to live on the Navajo Nation and become a part of it if they so choose when they are of an age to do so.

18. At this time this Court is only awarding temporary custody to Respondent because it continues to have concerns about the adjustment of the Minors to their new circumstances following their mother's death and the nine month period of separation between them. The Court also wishes to determine if Respondent's willingness to share the Minors with their mother's relatives will be more generous than how the Petitioners have behaved so far in allowing A.C. to see his father and sister.

19. The Court cannot emphasize enough for Respondent how important family relationships are for the Navajo, and how important it is for this Court that he demonstrate his understanding by allowing extended visits with the Minors' Navajo relatives, especially visits to the Navajo Nation. For Navajos, unlike the basic nuclear family prevalent in most of America, the primary family is not only the children and parents, but it is all relatives who can also serve as parents in some respects and act together as one large, extended family. It is hoped that Respondent will treat the relatives of children's mother as if they are his relatives, and that her relatives will accord the same consideration to Respondent.

20. The Court expects Social Services to remain active in this case and to make regular reports to the Court concerning the well being of the Minors

and the contacts they have with their mother's relatives.

Therefore, based upon the above findings of fact and conclusions of law, IT IS ORDERED, ADJUDGED AND DECREED:

1. The Order for Temporary Immediate Custody of September 19, 2003, is vacated.

2. Respondent is granted temporary custody of both minor children.

3. Petitioners are ordered to immediately return Minor A.C. to Respondent.

4. Social Services are ordered to monitor the welfare of the children, make regular reports to this Court, and to make efforts to seek assistance for their monitoring from appropriate social service agencies in Phoenix and/or Maricopa County.

5. Social Services is to monitor the visitations with the Minors and Petitioners as well as other Navajo relatives. It will arrange for such visits if the parties do not cooperate in establishing visitation. It will report to the Court if such visitations are not being performed.

6. A Status Hearing is set for six months from this date to determine whether Permanent Custody should be granted to Respondent.

7. Both Petitioners and Respondent are ordered to keep this Court and Social Services up to date concerning their current residential address, work address, mailing address and telephone numbers where they can be reached.